IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-518-JLK

WILDEARTH GUARDIANS,

    Plaintiff,

v.

U.S. OFFICE OF SURFACE MINING, RECLAMATION AND ENFORCEMENT, AL KLEIN, in his official capacity as Western Regional Director of the Office of Surface Mining Reclamation and Enforcement, Denver, Colorado, and SALLY JEWELL, in her official capacity as U.S. Secretary of the Interior,

    Defendants.

## COLOWYO COAL COMPANY'S UNOPPOSED MOTION TO INTERVENE AS A DEFENDANT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Colowyo Coal Company L.P. ("Colowyo") moves to intervene in the above-entitled matter, both as of right pursuant to Fed. R. Civ. P. 24(a)(2), and permissively pursuant to Fed. R. Civ. P. 24(b)(1)(B).  Plaintiff WildEarth Guardians ("WildEarth") challenges a 2007 U.S. Office of Surface Mining, Reclamation and Enforcement ("OSM") approval of a mine plan modification for the Colowyo Coal Mine, along with OSM mine plan approvals for six other coal mines in Colorado, Montana, New Mexico, and Wyoming.  In each case, WildEarth asserts that the approvals of the mine plan modifications violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and requests that the respective approvals be voided and enjoined.  As the mine owner and operator, Colowyo has a clear entitlement to intervention as of right, and Colowyo's interest in the litigation is especially acute given the age of the approval

and extensive reliance Colowyo has since placed upon it.  Neither Plaintiff nor the Federal Defendants oppose Colowyo's intervention.[1]

## BACKGROUND

**A.     Colowyo and its Interests**

The Colowyo Coal Mine ("Colowyo Mine" or "Mine") is a surface coal mine located in Moffat and Rio Blanco Counties, Colorado, approximately 28 miles south of Craig, Colorado.  The Mine is located on a mix of federal, state, and private lands, and presently sells most of its production to the Craig Station coal fired power plant, operated by Tri-State Generation and Transmission Association. ("Craig Station").  Declaration of Chris McCourt ("McCourt Decl.") ¶ 2.  The Craig Station has a capacity of 1,371 MW, sufficient to supply power to over 1,000,000 households.  *Id.* at ¶ 3.  At full production, the Colowyo Mine employs nearly 250 people, and in recent years the Mine has produced between 2 and 2.5 million tons of coal annually.  *Id.* at ¶ 4.

The Mine Plan Modification challenged by WildEarth was approved on June 15, 2007 ("2007 Approval"), and added a then-estimated 43 million tons of federal coal to the mine plan, distributed across Federal Leases C-29225, C-29226, and C-0123476 ("Leases"). *Id.* at ¶ 5.  The Leases are situated on the west and southwest sections of the Mine, intermingled with other federal leases, state leases, and private lands.  *Id.*  The 2007 Approval authorized mining to commence in the Leases, and mining has continued on the Leases since approval.  *Id.* at ¶ 6.

---

[1] On April 3, 2013, counsel for Colowyo conferred with counsel for the Federal Defendants, and the Federal Defendants confirmed that they do not object to Colowyo's intervention.  On May 29, 2013, counsel for Colowyo contacted counsel for Plaintiff, and counsel for Plaintiff stated that they do not oppose intervention by Colowyo Coal Company.  While Plaintiff and the Federal Defendants do not oppose intervention, neither have reviewed the instant motion and should be not construed as having taken a position on or endorsing Colowyo's specific contentions.
.

Millions of tons of coal in the Leases have been mined, contemporaneous with mining the other federal, state, and private coal. *Id.* At present nearly all the Mine's production is derived from Leases C-29225 and C-29226, and that is expected to continue for the foreseeable future. *Id.* Should the 2007 Approval be vacated and enjoined as requested by WildEarth, mining would effectively be halted not only in the Leases, but at the entire Mine as well due to the current configuration of active mining areas. *Id.* at ¶ 7.

**B.      The Legal Framework for Mining Plan Modifications**

OSM's approval of a mine plan modification occurs at the very end of a lengthy permitting and environmental review process. In the case of federal coal, the coal must first be leased, requiring environmental review and consent by the Bureau of Land Management ("BLM") and any other applicable federal land management agencies. As part of leasing, the BLM solicits comments and assistance from OSM, the Colorado Division of Reclamation, Mining, and Safety ("CDRMS"), and other state and federal agencies with specialized expertise.

Following leasing, the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et. seq. ("SMCRA") gives OSM primary responsibility to administer surface mining regulatory requirements. However, pursuant to Section 503 of SMCRA, Colorado has been delegated authority to regulate surface mining pursuant to a cooperative agreement. 30 C.F.R. § 906. The cooperative agreement provides that Colorado, like other delegated states, shall perform all permitting activities, as well as day-to-day inspections and enforcement on mines within the State. *Id.* Conversely, SMCRA Sections 523(a) and 523(c) provide that OSM retains final approval authority for mine plans and mine plan modifications, including any applicable NEPA requirements.

As a result, there is significant interplay between state and federal authorities in mine plan approvals. CDRMS and the mine prepares the detailed work associated with permitting and mine plan approval, including specific permit and mine plan terms necessary to protect the environment, coupled with any NEPA work performed by BLM in leasing and in managing federal lands. These are rolled up in a comprehensive Permit Application Package prepared by the mine and reviewed by CDRMS, which prepares a Proposed Decision and Findings of Compliance. *See* 30 C.F.R. § 746.13, 18. BLM further prepares proposed findings and recommendations regarding the mine's Resource Recovery and Protection Plan, compliance with the underlying leases, and compliance with the Mineral Leasing Act of 1920, as amended by the Federal Coal Leasing Act Amendments of 1976. *Id.* Public notice is provided of the Permit Application Package, including the analysis of potential environmental effects and permit terms. OSM then acts upon the complete mine plan approval file. Given the great amount of work subject to public participation that goes into the mine plan approval process before it reaches OSM, it is customary for OSM to rely upon that work, performing additional environmental review only as necessary to address modifications or supplementary issues. It is this last step that WildEarth challenges, with no evidence identified in the Complaint that WildEarth availed itself of any the extensive earlier opportunities to participate in proceedings before CDRMS and the BLM.

C. **WildEarth's Suit**

This litigation is the next phase in WildEarth's evolving and expanding attack on all aspects of the federal coal program. In recent years, WildEarth filed a number of challenges to leasing determinations and practices by the BLM. *See, e.g., WildEarth Guardians v. Salazar*,

4

880 F. Supp. 2d 77 (D.D.C. 2012) (challenging federal coal leasing program); *WildEarth Guardians*, et. al. *v. Salazar*, 880 F. Supp. 2d 77 (D.D.C. 2012) (challenging West Antelope II lease by application); *WildEarth Guardians et al. v. BLM et al.*, Civ. No. 1:11-cv-01481-RJL (D.D.C.) (challenging Caballo West and Belle Ayr North leases by application); *WildEarth Guardians et. al v. United States Bureau of Land Management*, 2:13-cv-00042-ABJ (D. Wyo.) (challenging North Porcupine, South Porcupine, North Hilight, and South Hilight lease applications). These have been accompanied by lawsuits challenging decisions by the United States Forest Service ("USFS") to consent to surface use and occupancy for the lands overlying the leases. *See, e.g., WildEarth Guardians et. al v. United States Forest Service*, 2:12-cv-00085-ABJ (D. Wyo.) (challenging Forest Service consents for North and South Porcupine lease applications). This Court has been the venue of a number of these challenges, most commonly focused on the underground coal operations in the Colorado's North Fork Valley. *See, e.g., WildEarth Guardians v. United States Forest Service,* 743 F. Supp. 2d 1243 (D. Colo. 2010). A common theme in these suits is the claim that the federal agency whose decision is being challenged improperly relied on the allegedly deficient environmental review of other state or federal agencies. In that sense, this challenge to OSM's mine plan modification approvals is the culmination of this line of thinking, because, as the final step in the extended approval process, OSM routinely adopts, cites, or incorporates the work of other federal and state agencies further up the decision chain.

WildEarth's decision to challenge the OSM approvals flows from their lack of success in challenging the underlying federal and state agency approvals, and reflects little more than an attempt to multiply the litigation burdens associated with coal permitting and evade their failure

to participate or prevail in earlier proceedings. Notably, the agglomeration of challenges to seven mine approvals spanning four states also is a transparent attempt to end-run the Court's recent decision to transfer WildEarth's challenges to multiple Wyoming coal projects to Wyoming. *See WildEarth Guardians v. United States Forest Service,* 2012 WL 1415378 (D. Colo. Apr. 24, 2012).

To date, WildEarth has not prevailed on the merits in any of its coal leasing suits in federal court.

## ARGUMENT

**A.** <u>**Standard of Review**</u>

To determine whether a party may intervene as of right, the Tenth Circuit looks at three factors:

> (1) the movant claims an interest relating to the property or transaction that is the subject of the action; (2) the disposition of the litigation may, as a practical matter, impair or impede the movant's interest; and (3) the existing parties do not adequately represent the movant's interest.

*WildEarth Guardians v. National Park Service,* 604 F.3d 1192, 1198 (10th Cir. 2010) (*"Safari Club"*).[2] The Circuit follows a "liberal line in allowing intervention," and these three "factors are not rigid technical requirements." *Id.* (*quoting WildEarth Guardians v. USFS*, 573 F.3d 992, 995 (10th Cir. 2009) ("*Mountain Coal Company*") and *San Juan County v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007) (en banc)) ("*San Juan County*").

---

[2] WildEarth's extreme litigiousness against the federal government complicates shorthand identification of the various cases. To reduce confusion, Colowyo will label the various decisions involving WildEarth using the name of the prospective intervenor.

6

Permissive intervention is committed to the discretion of the court, and may be granted if the requesting party shares a claim or defense in common with the main action. Fed. R. Civ. P. 24(b). In considering a request for permissive intervention, the Court is to evaluate whether intervention would prejudice any party. *Id.*

### B.     Colowyo Satisfies the Requirements for Intervention as of Right

In *Mountain Coal Company*, the Tenth Circuit held that a mine owner is entitled to intervention as of right in a challenge to the validity of NEPA proceedings related to federal consent to occupy the surface for the mine's proposed continuation of mining. *Mountain Coal Company,* 573 F.3d at 993-995. The posture of that case and the proposed intervention are for practical purposes indistinguishable from this litigation. Because of the close similarity between the proposed intervenor, defendants, and types of claims in the *Mountain Coal Company* and here, it is clear that Colowyo is entitled to intervention as of right. For that reason, and because Colowyo's motion is unopposed, Colowyo will only briefly touch upon each of the elements for intervention as of right.[3]

#### (1).     Colowyo Has an Interest Relating to the Subject of the Action

A prospective intervenor's interest is measured in light of the "subject of the action, not in terms of the particular issue before the court." *Safari Club,* 604 F.3d at 1198. The prospective intervenor's interest is not required to rise to the level of Article III standing in order to intervene as a matter of right. *San Juan County*, 503 F.3d at 1167. An interest in an agency's decision-making process is sufficient interest for intervention as of right. *Safari Club,* 604 F.3d at 1199.

---

[3]  Fed. R. Civ. P. 24 also notes that a motion to intervene must be timely. Colowyo's motion is timely, because no party has yet answered the Complaint and no Scheduling Order has been entered.

Colowyo has a clear interest in the litigation, in that WildEarth's challenge concerns the validity of approvals for Colowyo's mining operations at the Colowyo Mine. Paragraphs 50 and 59-68 of the Complaint specifically name Colowyo as the entity in receipt of the challenged approvals, and which WildEarth seeks to have enjoined. This plainly constitutes an "interest" within the meaning of Fed. R. Civ. P. 24(a).

### (2). The Disposition of the Litigation May Impair Colowyo's Interests

For a prospective intervenor to establish that its interest may be impaired by the litigation so as to allow intervention as of right, it need only show that it is *possible* for its legal interest to be impaired if intervention is denied. *Mountain Coal Company*, 573 F.3d at 995. Both the potential for a decision that could halt active mining and the potential for a judgment which "could have severe consequences for future mining," including the *stare decisis* effect of a judgment, are sufficient variables that the intervenor's interest may be impaired. *Id.* at 996 (citing *Utah Assoc. of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001)).

In its Complaint, WildEarth effectively seeks to dismantle the OSM's mining plan approval program by separating OSM environmental review from the already extensive environmental review requirements that mine modifications undergo. This result would impair Colowyo's existing approvals, and interest in consistent and efficient environmental review for mine modifications going forward. The potential for impairment is manifestly present where, as here, the stated purpose of the Plaintiff is to bring a halt to the prospective intervenor's operations. *See* Complaint at Request for Relief. Therefore, the disposition of WildEarth's Complaint may impair the interests Colowyo seeks to protect. *Mountain Coal Company*, 573 F.3d at 995.

### (3).    The Existing Parties Do Not Adequately Represent Colowyo's Interests

For the third factor for intervention as of right, the prospective intervenor is only required to again show the *possibility* of inadequate representation by other parties. *Id.* at 996. This burden is minimal. *Id.* In the present case, the Federal Defendants cannot represent Colowyo's interests. *Mountain Coal Company* made clear that the government is not a party upon which a prospective intervenor coal company can rely to protect its interest. *Id.* The government's representation is for the public generally and cannot be assumed to be identical to particular private interests. *Id.*

Furthermore, Colowyo's interests sufficiently diverge from those of the operators of the individual mines at issue in WildEarth's Complaint. While there are some commonalities to WildEarth's legal theories, each claim also asserts facts and claims specific to the challenged mine plan approvals. Some approvals were based upon Environmental Impact Statements, while others were based upon Environmental Assessments or Statements of NEPA Compliance, each of which brings into play different components of the federal NEPA regulations. Moreover, the range of approvals spans nearly six years, and embody evolving NEPA practices. As a result, owners/operators of mines with older approvals may more vigorously assert statute of limitations/laches defenses than may those with more recent approvals. As a result, Colowyo's interests are not adequately represented by either the federal government or the individual companies whose mines are the subject of this action, and Colowyo should be granted intervention as of right. *Id.* at 996.

### C.    In the Alternative, Colowyo Should be Granted Permissive Intervention

In the event that the Court concludes that Colowyo does not satisfy the requirements for intervention as of right, Colowyo respectfully requests permissive intervention. Colowyo expects that its defense that WildEarth's suit is unfounded will in key respects track the Federal Defendants' Answer when such Answer is filed. As established in this brief and in the McCourt Declaration, Colowyo's interests in this case go to the core of WildEarth's petition and requested relief. Furthermore, Colowyo has timely moved to intervene, and, because of the early stage of the proceedings, Colowyo's participation as intervenor will not prejudice management of the litigation. Colowyo's participation will not inhibit any party's ability to prosecute its claims or defenses. For these reasons, Colowyo should be allowed to intervene.

### D.    Terms and Conditions of Intervention

Colowyo has reviewed the Court's Order granting Trapper, Inc.'s motion to intervene [doc #10] and understands the same requirements will be imposed on Colowyo. Colowyo will comply with this requirement to its fullest ability, but notes that it is Justice Department policy not to share draft pleadings with third parties. Unless an exception to this policy is granted or ordered, Colowyo's and other intervenors' ability to confer with the Federal Defendants, where intervenors and the Federal Defendants have simultaneous filings, will be accordingly constrained. In that event, Colowyo's certification of compliance and any resulting filings will be based on the Federal Defendants' oral representations of their arguments.

This problem can be mitigated by staggering the timing of Federal Defendants' and intervenors' submissions, an approach that has been recently employed to good effect in similar litigation in Wyoming, *see WildEarth Guardians, et. al., v. United States Forest Service,* 2:12-

cv-00085-ABJ (D. Wyo.).  Should its motion to intervene be granted, Colowyo will confer with the other parties and strive to jointly propose a similar mechanism as part of the Rule 16 scheduling process.

## CONCLUSION

For the foregoing reasons, Colowyo respectfully requests the Court to grant its motion to intervene as of right, or in the alternative, for permissive intervention.

Respectfully submitted this 14th day of June, 2013.

        **DORSEY & WHITNEY LLP**

        s/ *Stephen D. Bell*
        Stephen D. Bell
        Scott P. Sinor
        Dorsey & Whitney LLP
        1400 Wewatta Street, Suite 400
        Denver, CO 80202
        Telephone: (303) 629-3400
        Fascimile: (303) 629-3450
        E-mail: bell.steve@dorsey.com
              sinor.scott@dorsey.com

        ATTORNEYS FOR
        COLOWYO COAL COMPANY, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2013 I caused the foregoing document, titled COLOWYO COAL COMPANY'S MOTION TO INTERVENE AS A DEFENDANT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES to be electronically filed with the Clerk of the Court via CM/ECF which will serve all parties of record.

*s/ Stephen D. Bell*
Stephen D. Bell