IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| WILDEARTH GUARDIANS, | ) |
| | ) |
| Plaintiff, | )   Case No. 1:14-cv-00112-RJ-CG |
| | ) |
| v. | ) |
| | ) |
| U.S. OFFICE OF SURFACE MINING | ) |
| RECLAMATION AND ENFORCEMENT | ) |
| *et al.*, | ) |
| | ) |
| Federal Defendants, | ) |
| | ) |
| SAN JUAN COAL CO., | ) |
| | ) |
| Defendant-Intervenor. | ) |

**PLAINTIFF WILDEARTH GUARDIANS' RESPONSE TO
FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND**

Plaintiff WildEarth Guardians ("Guardians") initiated this litigation in 2013[1] to remedy the chronic failure of the Federal Defendants to address the potentially significant environmental impacts of coal mining at the San Juan Mine in northwest New Mexico and to involve the public in their mining-related decision in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4231 *et seq*. In approving the San Juan Mining Plan challenged in this

---

[1] The claims here originated in *WildEarth Guardians v. OSMRE*, 104 F. Supp. 3d 1208 (D. Colo. 2015), as part of a challenge to seven Mining Plans for coal mines in four different states. The court there severed and transferred the San Juan Mine claims to this Court and the Spring Creek Mine claims to the District of Montana, retaining claims related to two mining plans for Colorado mines. Guardians prevailed on the merits in the Districts of Colorado and Montana. Guardians submitted *WildEarth Guardians v. OSMRE* to this Court as supplemental authority on May 11, 2015. ECF Doc. 67. Guardians submitted *WildEarth Guardians v. OSMRE*, 2016 WL 259285 (D. Mont. Jan. 21, 2016), to this Court as supplemental authority on May 4, 2016. ECF Doc. 87. This opinion accepted most of the Magistrate Judge's recommendations found in *WildEarth Guardians v. OSMRE*, 2015 WL 6442724 (D. Mont. Oct. 23, 2015) (Magistrate Findings and Recommendations), with some modifications to the recommended remedy as explained herein.

litigation, Federal Defendants failed to comply with NEPA in two specific ways. First, Federal Defendants failed to provide the public with any notice of or opportunity to participate in the NEPA process for the decision approving the San Juan Mining Plan and, instead, opted to conduct the NEPA process for the Mining Plan wholly within the confines of the Office of Surface Mining's Denver office. ECF Doc. 40 ¶ 50. Second, Federal Defendants failed to take a hard look at potentially significant environmental impacts, in particular, impacts to air quality from the expansion of coal mining at the San Juan Mine. To support approval of the Mining Plan, the Office of Surface Mining Reclamation and Enforcement prepared a one-page Finding of No Significant Impact ("FONSI"). The FONSI purported to analyze the environmental impacts of expanded coal mining operations at the San Juan Mine, but did nothing more than reference existing NEPA and non-NEPA documents from nearly a decade earlier, and rely on them for analysis of the environmental impacts of additional mining. AR 11 (Mining Plan FONSI). Federal Defendants made no effort to evaluate whether the decade-old documents they relied on were relevant to or sufficient for assessing impacts of mining additional coal from San Juan Mine almost 10 years later.

     Federal Defendants seek a voluntary remand of the challenged Mining Plan approval to prepare an Environmental Impact Statement ("EIS") analyzing the Mining Plan's impacts pursuant to NEPA. Federal Defendants propose to complete this analysis in three years, and request that mining continue under the challenged Plan during the remand. ECF Doc. 91 (July 18, 2016). Guardians does not oppose remanding the challenged decision to the agency to prepare an EIS; however, for the reasons discussed below, Guardians respectfully requests that the Court: (1) impose additional reasonable conditions on the remand Order to ensure the timely completion of the EIS —specifically, deferred vacatur of the Mining Plan and quarterly progress

reports to the Court by Federal Defendants, (2) declare that Guardians is a prevailing party, and (3) retain jurisdiction over this case to enforce the remand Order.

## ARGUMENT

**I.  If the Court Remands the Decision, the Court Should Impose a Deferred Vacatur Requirement Consistent with Remedies Ordered in Similar Cases.**

Federal Defendants request remand without vacatur of their Mining Plan approval because the Mine represents it would be harmed by immediate vacatur of the Mining Plan. ECF Docs. 91 at 11-12, 92-1 at 4-7. Federal Defendants also cite to Guardians' similar mining plan challenges in the Districts of Colorado and Montana where the courts ruled in Guardians' favor on the merits and ordered Federal Defendants to perform NEPA analyses for the challenged mining plans without immediately vacating the Plans. ECF Doc. 91 at 11. Although the courts in those cases did not order immediate vacatur of the challenged mining plans, which would have resulted in immediate cessation of mining on federal leases covered by the challenged plan, the courts imposed both a time frame for completion of the NEPA analyses and *deferred* ordering vacatur of the mining plans until the close of the time period for completing the NEPA analyses. If the Court grants Federal Defendants' Motion, Guardians requests the same conditions here.

In *WildEarth Guardians v. OSMRE*, 104 F. Supp. 3d 1208 (D. Colo. 2015) ("*WildEarth Guardians I*"), Guardians challenged Federal Defendants' approvals of two mining plans expanding mining of federal coal at two Colorado mines, claiming Federal Defendants failed to comply with NEPA in the same manner alleged in this case. Ruling in Guardians' favor on all claims, the court there ordered Federal Defendants to complete a NEPA analysis in 120 days and deferred entering a vacatur order at that time. *Id*. at 1232. However, the court also ordered that:

> If this process has not been completed within the 120-day window, then an order of vacatur will be immediately effective absent further court order based upon very good cause shown.

3

*Id*. Federal Defendants completed the court-ordered NEPA analysis and issued a new mining plan approval within the 120-day time period, rendering vacatur unnecessary.[2]

In *WildEarth Guardians v. OSMRE*, 2015 WL 6442724 (D. Mont. Oct. 23, 2015) ("*WildEarth Guardians II*"), Guardians challenged Federal Defendants' approval of a mining plan for the Spring Creek Mine in Montana, alleging similar violations of NEPA. Ruling in Guardians' favor on all claims and guided by the remedy fashioned in *WildEarth Guardians I*, the Magistrate Judge there made the following recommendations as to remedy:

> . . . that vacatur be deferred for a period of 180 days from the date of the final order . . . [and] that Federal Defendants, during this time period, be required to correct NEPA violations by preparing an updated environmental assessment, taking a hard look at the direct and indirect environmental effects of the [Spring Creek] mining plan amendment, and complying with applicable public notice requirements.

*Id*. at *9. The District Judge accepted the Magistrate Judge's recommended remedy with respect to deferred vacatur, modified the remedy to allow Federal Defendants 240 days to complete a new NEPA analysis, added the requirement that Federal Defendants file monthly status reports with the court within the 240-day period, and allowed Federal Defendants to "seek leave to extend the 240-day deadline upon a showing of good cause." *WildEarth Guardians v. OSMRE*, 2016 WL 259285, at *3 (D. Mont. Jan. 21, 2016). According to Federal Defendants' most recent status report filed in the District of Montana on July 21, 2016, the NEPA process for the environmental assessment remains on schedule for completion within the court-ordered deadline.[3] *WildEarth Guardians v. OSMRE*, Case No. 1:14-cv-00013, Dkt. 150 (D. Mont.).

---

[2] As Federal Defendants explain in note 3 of their Motion, the Tenth Circuit vacated the district court judgment in *WildEarth Guardians I* on mootness grounds following Federal Defendants' completion of new court-ordered NEPA analyses and issuance of new decisions for the challenged mining plans. ECF Doc. 91 at 9.

[3] In addition to *WildEarth Guardians I* and *II*, Federal Defendants also cite to *Cook Inletkeeper v. EPA*, 400 Fed. Appx. 239, 241 (9th Cir. 2010), and *Def. of Wildlife v. Jackson*, 791 F. Supp.

In fashioning appropriate remedies in *WildEarth Guardians I* and *II*, both courts recognized that remand with vacatur is a typical remedy in Administrative Procedure Act cases and that courts have the discretion to fashion an alternative remedy on equitable grounds. *WildEarth Guardians I*, 104 F. Supp. 3d at 1231; *WildEarth Guardians II*, 2015 WL 6442724, at *8. Both courts applied the test for vacatur adopted by the Ninth and D.C. Circuits that balances the seriousness of the agency's errors with "the disruptive consequences of an interim change that may itself be changed" to determine that immediate vacatur of the mining plans was not warranted and instead deferred vacatur to provide incentive for Federal Defendants to complete new NEPA analyses in a timely manner. *Id*. at 1231; *id*. at *8-9.

If the Court grants Federal Defendants' Motion here, remand coupled with deferred vacatur of the Mining Plan and quarterly status reports to the Court is appropriate and consistent with the remedies ordered by courts in other districts dealing with similar mining plan challenges. In their Motion, Federal Defendants have committed to completing an EIS for the San Juan Mining Plan in three years, thus an Order deferring vacatur of the Mining Plan to a point three years in the future would not immediately result in any of the harms to mining operations or mine workers articulated in Federal Defendants' Motion or Intervenor's declaration. ECF Docs. 91 at 11, 92-1 at 4-7. Mining will not cease at the San Juan Mine nor will mining operations be otherwise affected if the Court issues an Order that includes deferred

---

2d 96, 118-19 (D.D.C. 2011), as examples of where courts granted an agency's request for a voluntary remand without imposing vacatur of the challenged decisions. Dkt. 91 at 11. However, neither of these cases speak to the issue of whether *deferred* vacatur pending an agency's compliance with the terms of a remand order is appropriate. Therefore, these cases are inapposite for the issues before this Court. *WildEarth Guardians I* and *II* are directly analogous to the current case and, therefore, provide relevant guidance in crafting a remand Order.

vacatur.[4] Indeed, the possibility of vacatur would not even arise until 2019 at the earliest. By 2019, Federal Defendants will know if completion of the EIS is likely to be delayed, and for good cause, could seek an extension of the EIS deadline from the Court, as allowed by the courts in *WildEarth Guardians I* and *II*.

Federal Defendants have timely complied with court orders in *WildEarth Guardians I* and *II*, avoiding vacatur in *WildEarth Guardians I* and on track to avoid vactur in *WildEarth Guardians II*. Accordingly, it follows here that Federal Defendants will make every effort to timely comply with a court-ordered deadline for completion of an EIS within three years incentivized by the prospect of vacatur of the Mining Plan for a missed deadline. Given Federal Defendants' compliance with similar court orders in other mining plan cases, actual vacatur of the San Juan Mining Plan (and the cessation of mining activities) in the future would be highly unlikely.

## II. If the Court Declines to Impose Deferred Vacatur on the Remand Order, the Court Should Set a More Expeditious Time Frame for Completion of the EIS.

Deferred vacatur should be a necessary component of any remand Order to ensure that Federal Defendants satisfy their commitment to complete an EIS for the Mining Plan within three years. If, however, the Court declines to include deferred vacatur in its remand Order, then Guardians asks the Court to consider imposing a more expeditious time frame for completion of the EIS, requiring completion of the EIS and a new decision within two years of the date of the Order.

---

[4] Deferred vacatur is consistent with Federal Defendants' request that the Court maintain the "status quo" of mining during the pendency of the remand. Dkt. 91 at 11. Vacatur of the San Juan Mining Plan, and its attendant disruption of mining operations, would only become a concrete reality if Federal Defendants fail to follow through with their commitment to complete an EIS for the Mining Plan, and do not obtain an extension of the deadline from the Court on a showing of good cause.

Guardians has already been harmed by Federal Defendants' approval of the San Juan Mining Plan in the absence of a compliant NEPA analysis and public involvement. As a procedural statute, NEPA's fundamental purpose is to influence the agency's decisionmaking process "by focusing the [federal] agency's attention on the environmental consequences of a proposed project," so as to "ensure[ ] that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast." *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349 (1989). The "assessment of all 'reasonably foreseeable' impacts must occur at the earliest practicable point, and must take place before an 'irretrievable commitment of resources' is made." *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 718 (10th Cir. 2009); 42 U.S.C. § 4332(2)(C)(v); 40 C.F.R. §§ 1501.2, 1502.22. "[W]hen a decision to which NEPA obligations attach is made without the informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered." *Sierra Club v. Marsh,* 872 F.2d 497, 500 (1st Cir. 1989) (citations omitted).

Accordingly, Guardians asks the Court to impose an expeditious time frame for completion of the EIS because mining on the lease subject to the challenged Mining Plan has commenced, and will continue throughout the duration of the NEPA analysis. In the absence of deferred vacatur, a two-year time frame will prevent prolonged harm to Guardians and the environment from ongoing coal mining authorized without adequate environmental analysis. Without deferred vacatur, Federal Defendants have no incentive to complete their proposed NEPA analysis in a timely manner and can delay completion indefinitely. Imposing a shorter time frame and retaining jurisdiction for enforcement of the terms of the remand Order, will ensure that completion of the EIS for the Mining Plan remains a priority for Federal Defendants.

### III. The Court Should Declare Plaintiff a "Prevailing Party."

Finally, if the Court grants Federal Defendants' motion, regardless of whether the Court includes a deferred vacatur provision in its Order, Guardians respectfully requests that the Court include in its Order a finding that Plaintiff is a "prevailing party" within the meaning of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Such a finding will preserve Guardians' ability to seek fees and costs associated with pursuing its NEPA claims. Guardians should be deemed a prevailing party in this case because, even though granting Federal Defendants' motion will preclude a judgment on the merits of the case, achieving a remand order and an EIS that includes opportunities for public participation prior to a new decision on the Mining Plan are the remedies Guardians seeks in this case. ECF Doc. 37 at 18-19 (Amended Complaint). *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 604-05 (2001) (A plaintiff must establish that the federal court action resulted in a "material alteration of the legal relationship of the parties" and that the alteration was "judicially sanctioned"); *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (holding that the *Buckhannon* rule regarding prevailing party status governs EAJA fee applications); *Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997) (holding a plaintiff is a prevailing party under EAJA where there has been a voluntary remand to an agency without a judgment on the merits and "the remand order terminates the litigation in favor of the claimant."). *WildEarth Guardians I*, 104 F. Supp. 3d at 1232, and *WildEarth Guardians II*, 2016 WL 259285, at *3, both determined that Guardians was entitled to reasonable attorneys' fees under EAJA.

### CONCLUSION

For the foregoing reasons, Guardians respectfully requests that the Court: (1) grant in part Federal Defendants' Motion with respect to the request for a voluntary remand to complete an

EIS for the San Juan Mining Plan within three years; (2) defer vacatur of the challenged Mining Plan for three years pending timely completion of the NEPA process; (3) require Federal Defendants to file quarterly status reports with the Court during the three-year time frame; (4) allow Federal Defendants to seek leave to extend the three-year deadline upon a showing of very good cause; and (5) declare Plaintiff WildEarth Guardians is a prevailing party.

Respectfully submitted on this 2nd day of August, 2016.

/s/ Samantha Ruscavage-Barz
WildEarth Guardians
516 Alto Street
Santa Fe, NM 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Attorney for Plaintiff WildEarth Guardians*

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing RESPONSE was served on all counsel of record through the Court's ECF system on this 2nd day of August 2016.

                                                                        /s/ Samantha Ruscavage-Barz